IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| JAMES R. WITHROW, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 12-06-LPS-CJB |
| | ) | |
| JOHN H. SPEARS, and TRUCKS ON THE RUN, Jointly and Severally, | ) | |
| | ) | |
| Defendants/Third Party Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| STATE FARM FIRE AND CASUALTY COMPANY | ) | |
| | ) | |
| Third Party Defendant. | ) | |

**REPORT AND RECOMMENDATION**

Plaintiff James R. Withrow ("Withrow" or "Plaintiff") filed this action against Defendants John H. Spears ("Spears") and Trucks on the Run (collectively, "Defendants") for personal injuries he suffered in a motor vehicle collision. Defendants subsequently filed a third-party Complaint against Third Party Defendant State Farm Fire & Casualty Co. ("State Farm"), which is Plaintiff's uninsured motorist ("UM") carrier. Presently pending before the Court is State Farm's Motion for Summary Judgment ("Motion"). (D.I. 45) For the reasons set forth below, the Court recommends that the Motion be DENIED.

**I. BACKGROUND**

**A. Factual Background**

This case arises from a collision that occurred on November 4, 2011, when a tractor-

trailer driven by Spears and owned by Trucks on the Run hit Withrow's car. (D.I. 46, ex. A at ¶ 7; D.I. 52, ex. B at 13) The collision occurred at approximately 5:00 a.m. on the right shoulder of the northbound lanes of Route 1 in Delaware. (D.I. 52, ex. B at 25, 95-96; *id.*, ex. C at 22) At the time of the collision, the weather was dry and clear, and it was dark outside. (D.I. 52, ex. B at 25, 41; *id.*, ex. C at 23-24, 49)

Plaintiff was driving to work, traveling northbound on Route 1 in his 2009 Toyota Camry, when a medical issue arose that required his attention. (*Id.*, ex. C at 23-27) Plaintiff pulled his car off of the roadway and parked it on the right shoulder, to the right side of the rumble strip. (*Id.* at 24, 33) Plaintiff alleges that he turned on his hazard lights and shut off his car, and then exited it, leaving the driver's-side door open. (*Id.* at 26-28, 44-45, 52) After retrieving an item from the trunk, Plaintiff walked to the right passenger side of his car and tended to the issue. (*Id.* at 24-26, 44-45) Then Plaintiff reentered the vehicle, having been outside for an estimated three to four minutes. (*Id.* at 25-26, 45)

Plaintiff alleges that, upon reentering his car, he turned it on, put on his seatbelt and turned off the hazard lights. (*Id.* at 28-29, 46) At the moment of impact, Plaintiff contends that he was in the process of closing his driver's-side car door. (*Id.* at 29, 46) Plaintiff saw Spears' tractor trailer coming past him as it and Plaintiff's car door made contact, and immediately following the impact he observed Spears' truck on the roadway. (*Id.* at 47-48) Plaintiff did not see any other vehicles. (*Id.* at 48) A portion of Plaintiff's left hand, including his index and middle fingers and his thumb, was severed in the collision. (*Id.*, ex. B at 44; *id.*, ex. C at 14, 46)

Spears, in the course of his employment with Trucks on the Run, was driving an "[i]nternational tractor" (i.e., a "single-axle and a [28-foot] trailer") in the right northbound lane

2

of Route 1 at approximately 65 miles per hour, en route from Milford to Wilmington. (D.I. 52, ex. B at 13, 15-16, 22, 33-34, 47) Spears observed Withrow's car parked on the shoulder of the roadway; he said that the car's taillights were on, but asserts that its flashers were not. (*Id.* at 25-26) Spears contends that he did not see Withrow's car door open at any time prior to the collision. (*Id.* at 27, 35) Once aware of Withrow's car, Spears decided to change lanes, as was his normal practice in such a situation "to give adequate room to the car and keep [himself] safe." (*Id.* at 22, 36, 70)

Spears alleges that when he looked in his left side rear-view mirror as he went to move to the left lane, he saw a truck (the "Unidentified Truck") in the left lane that was overtaking him. (*Id.* at 22, 27-28) Spears could not describe the truck "real well," other than noting that it was a "big truck[,]" a "sleeper cab" that he believes was dark in color and pulling a trailer. (*Id.* at 27-28) Spears did not know how fast the Unidentified Truck was traveling compared to his own tractor trailer. (*Id.* at 28)

Due to the presence of the Unidentified Truck in the left lane, Spears could not switch lanes as he had planned. (*Id.* at 22) As Spears' tractor trailer proceeded closer to Withrow's car, the Unidentified Truck started to pass Spears. (*Id.*) Spears alleges that as the Unidentified Truck was going by Spears' tractor trailer, it was "starting to drift over towards [Spears]." (*Id.*) Spears became aware that the Unidentified Truck was "too close" to him as the tractor of the Unidentified Truck was "just about passing" Spears. (*Id.* at 30) When asked whether the Unidentified Truck entered his lane at any point as it was passing him, Spears said "I don't think he did" but then noted that he "c[ouldn't] see" the center line dividing his lane from the lane in which the Unidentified Truck was traveling. (*Id.* at 31) Spears was sure that the Unidentified

Truck was "closer than he should have been" to Spears' lane of travel—it was "crowding" Spears—and thus the Unidentified Truck had his attention. (*Id.* at 22, 31, 70) Spears alleges that he was not in a "panic that [the Unidentified Truck] was coming over," however, because "it wasn't like [the Unidentified Truck] was turning into [Spears]." (*Id.* at 32)

Spears alleges that he moved over in his lane as a result of the fact that the Unidentified Truck was crowding him, taking "as much of the right side of [his] lane as [he] could to try and avoid a collision." (*Id.* at 22-23) Spears contends that he did not "swerve" or jerk his wheel over to the right side of his lane; rather, the shift was a "very, very minute, gradual easing to one side of the lane." (*Id.* at 31-32)

Spears alleges that he could not see the white fog line on the right of his lane of travel. (*Id.* at 32) Upon easing to the right side of his lane of travel, Spears contends that although he "favored the right side of the lane[,]" to his knowledge no part of his truck crossed the white fog line. (*Id.* at 32, 70) Spears alleges that he would have "hit the rumble strip" if he had crossed that line, which he did not do. (*Id.* at 32-33) While Spears admits that it would be possible to cross the white fog line without contacting the rumble strip, he asserts that "they are so close that it's not probable." (*Id.* at 78) Spears also attributes his certainty that he did not cross the white fog line to his years of experience as a truck driver. (*Id.* at 32-33) Spears further alleges that while he "d[idn't] believe that [he] went over the white line[,] [he also] can't say that absolutely because" he could not see the white line at the time. (*Id.* at 33)

When his tractor trailer was in proximity of Withrow's car, Spears heard a noise coming from the trailer that indicated that something had gone wrong, so he pulled over to the right shoulder of the roadway to investigate. (*Id.* at 23, 43, 70) At first, Spears thought that perhaps a

4

side door on the trailer had come ajar and then re-closed; he did not think it possible that his tractor trailer had struck Withrow's vehicle. (*Id.* at 23, 34, 70) However, after inspecting his tractor trailer and seeing nothing wrong, Spears walked back to Withrow's car "to cover all bases." (*Id.* at 43) Spears saw glass on the shoulder as he got closer, and he discovered that Withrow had been injured upon arriving at Withrow's car. (*Id.* at 44)

Spears claims that Withrow's vehicle, at the time of collision, was parked "way too close" to the travel lane, "within one to two feet[,]" which he noticed while "looking at everything" after the collision. (*Id.* at 35) Based on his "own investigation[,]" Spears also believes that Withrow's car door was being opened as Spears' tractor trailer was passing by. (*Id.* at 65)

Following the collision, multiple Delaware State Police officers responded to the scene, including Trooper Kevin Schrader. (*Id.* at 67-68; *id.*, ex. J at 12) Spears and Trooper Schrader had a few discussions during which Spears provided his information (i.e., his license and paperwork) and his account of the collision. (*Id.*, ex. B at 50, 68-71; *id.*, ex. J at 15) Trooper Schrader subsequently generated a police report regarding the collision. (*Id.*, ex. B at 68-76; *id.*, ex. J at 11)

Trooper Schrader testified that in describing the collision, Spears told him that "he was traveling in the right lane on Route 1, and he didn't see Mr. Withrow's vehicle on the shoulder and another tractor trailer actually drifted into his lane of travel, which caused him to veer off the east edge of the roadway and [] strike Mr. Withrow's vehicle." (D.I. 52, ex. J at 15, *see also id.* at 40-41) While Spears claims that he made clear to Trooper Schrader that he did see Withrow's car, and does not recall discussing the white fog line with the Trooper, he agrees with the

accuracy of the portion of the police report that stated that "another semi tractor-trailer was adjacent to his vehicle in the left lane and began to drift into his lane." (*Id.*, ex. B at 74-76, 78)

### B. Procedural Posture

On November 28, 2011, Plaintiff commenced this action in the Superior Court of the State of Delaware. (D.I. 1 at ¶ 1) On January 3, 2012, Defendants removed the action to this Court. (D.I. 1) On April 6, 2012, Judge Leonard P. Stark referred the action to the Court to hear and resolve all pretrial matters, up to and including the resolution of case dispositive motions. (D.I. 15) Defendants later filed a Third Party Complaint on November 15, 2012 against State Farm, seeking contribution and indemnification under Plaintiff's UM policy for any negligence attributable to the Unidentified Truck in causing the collision. (D.I. 30)

On May 1, 2013, State Farm filed the instant Motion. (D.I. 45) The Motion was fully briefed as of May 24, 2013. (D.I. 55) A pretrial conference is scheduled for October 16, 2013, and trial is to begin on November 4, 2013. (D.I. 64)

## II. STANDARD OF REVIEW

A grant of summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585 n.10 (1986). If the moving party has demonstrated the absence of a genuine dispute of material fact, the nonmovant must then "come forward with specific facts showing that there is a genuine issue for trial." *Id.* at 587 (internal quotation marks and emphasis omitted). If the nonmoving party fails to make a sufficient showing on an essential element of its

case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). During this process, the Court will "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

However, in order to defeat a motion for summary judgment, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586-87; *see also Podobnik v. United States Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (party opposing summary judgment "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue") (internal quotation marks and citation omitted). The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). Facts that could alter the outcome are "material," and a factual dispute is genuine only where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (internal citations omitted). A party asserting that a fact cannot be—or, alternatively, is—genuinely disputed must support the assertion either by citing to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials"; or by "showing that the materials cited do not

establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) & (B).

## III. DISCUSSION

In this case, Defendants seek contribution and indemnification from State Farm, Plaintiff's UM carrier, for any negligence attributable to the Unidentified Truck in causing the collision. (D.I. 30) The purpose of UM coverage is to protect innocent, injured persons who are unable to recover damages from negligent tortfeasors. Del. Code tit. 18, § 3902(a); *Evans v. Stuard*, 1989 WL 167406, at *2 (Del. Super. Ct. Oct. 6, 1989). The coverage contemplated by Section 3902, Delaware's uninsured vehicle coverage law, ensures that an insured will have at least the same resources from which to seek compensation as if the collision had involved a motorist with Delaware's minimum insurance coverage (with the option of purchasing additional coverage, up to the limits of an insured's bodily injury liability insurance). Del. Code tit. 18, § 3902; *see also Banaszak v. Progressive Direct Ins. Co.*, 3 A.3d 1089, 1094 (Del. 2010); *Price v. State Farm Mut. Auto. Ins. Co.*, C.A. No. N11C-07-069-RRC, 2013 WL 1213292, at *6 (Del. Super. Ct. Mar. 15, 2013). The insurance carrier providing the UM coverage stands in the shoes of the absent tortfeasor as a source of payment to the injured person. *Price*, 2013 WL 1213292, at *6; *Evans*, 1989 WL 167406, at *2.

To establish a claim for negligence in Delaware, Defendants must show, by a preponderance of the evidence, that the Unidentified Truck breached a duty of care, and that such breach was the proximate cause of the subject collision.[1] *Pipher v. Parsell*, 930 A.2d 890, 892

---

[1] Delaware law applies here because a federal court exercising diversity jurisdiction must apply the substantive law of the state in which it sits. *Highlands Ins. Co. v. Hobbs Grp., LLC*, 373 F.3d 347, 351 (3d Cir. 2004); *Holman v. Univ. of Del.*, Civil Action No.

(Del. 2007). Delaware state courts typically decline to decide negligence actions at the summary judgment stage of proceedings. *Morris v. Theta Vest, Inc.*, C.A. No. 08C-06-030 (RBY), 2009 WL 693253, at *1 (Del. Super. Ct. Mar. 10, 2009) (citing *Ebersole v. Lowengrub*, 180 A.2d 467, 469 (Del. 1962)); *see also Price v. Saylor*, C.A. No. N10C-12-220 PLA, 2012 WL 3090923, at *1 (Del. Super. Ct. July 30, 2012) ("Summary judgment motions are disfavored in negligence cases because the fact patterns presented are usually susceptible to more than one interpretation."). Rather, it is the factfinder who ordinarily resolves issues of negligence and its causal relationship to alleged injuries. *Johnson v. Magee*, C.A. No. 05C-05-006 RFS, 2007 WL 4248523, at *3 (Del. Super. Ct. Nov. 30, 2007); *Evans v. Riggs*, No. CIV.A.99C08006, 2001 WL 845751, at *3 (Del. Super. Ct. July 5, 2001). However, where the undisputed facts compel only one conclusion, the court must enter summary judgment consistent with that conclusion. *Faircloth v. Rash*, 317 A.2d 871, 871 (Del. 1974); *see also Johnson*, 2007 WL 4248523, at *3.

State Farm argues that it is entitled to summary judgment because the only inferences to be drawn from the undisputed facts are that "the Unidentified Truck did not cross into Spears' lane, and Spears in turn did not leave his own lane or otherwise cross the white line." (D.I. 46 at 13) Therefore, State Farm contends, the facts could not support a finding that the Unidentified Truck breached a duty of care that proximately caused the collision, and so Defendants' claim for negligence against State Farm must fail as a matter of law. (*Id.*) For the reasons set out below, the Court disagrees.

---

09-772, 2011 WL 1557924, at *5 (D. Del. Apr. 21, 2011). Both parties agree that Delaware law is the controlling substantive law in this diversity action. (D.I. 46 at 8; D.I. 52 at 6)

State Farm first asserts that "Spears did not testify that the passing Unidentified Truck entered his lane" and thus, it is clear that the Unidentified Truck "did not leave its travel lane[.]" (D.I. 46 at 4; D.I. 55 at 2-3) Therefore, this argument goes, because the Unidentified Truck moved lawfully only in its own lane of travel, no negligence for the collision can be attributed to it. (D.I. 46 at 10; D.I. 55 at 5-6) The argument, however, is a faulty one, because it is premised on incomplete picture of the evidence relating to the Unidentified Truck's actions—evidence that is not that clear or simple.

For one thing, in setting out Spears' testimony with respect to the actions of the Unidentified Truck, State Farm glosses over certain significant passages. At Spears' deposition, when asked by Plaintiff's counsel whether the Unidentified Truck entered Spears' lane at any point, Spears stated, "I don't *think* he did. *See, I can't see the line.* I know he was, you know, he was closer than he should have been had he been in the middle of his lane." (D.I. 52, ex. B at 31 (emphasis added)) Spears' actual testimony, then, does not fully jibe with State Farm's characterization of it; in the record before the Court, Spears never unequivocally states that the Unidentified Truck "moved within its own lane—the left lane—as it passed Spears' truck, yet never actively entered his lane." (D.I. 46 at 2) Rather, what can be gleaned from Spears' deposition testimony is that while Spears did not *think* that the Unidentified Truck crossed the line, he could not see that line, so he could not know for sure; the point on which Spears is sure is that the Unidentified Truck was much closer than it should have been at the time to Spears' tractor trailer.

Indeed, as Defendants point out, (D.I. 52 at 5), there is further evidence in the record contradicting the assertion that the Unidentified Truck never left its lane of travel. Trooper

10

Schrader, who responded to the scene of the collision, testified that when he asked Spears what happened—just after the collision had occurred—Spears told him that the Unidentified Truck "actually drifted into his lane of travel[.]" (D.I. 55, ex. J at 15) Trooper Schrader recorded a similar statement in the police report generated with respect to the collision—that is, that "another semi tractor-trailer was adjacent to [Spears'] vehicle in the left lane and began to drift into his lane." (*Id.*, ex. B at 74) In fact, Spears reviewed that very sentence of Trooper Schrader's report during his deposition, and testified that it was accurate. (*Id.*) Thus, in asserting that the "only testimony there is" in the record is that "the Unidentified Truck did not leave its travel lane[,]" (D.I. 55 at 2-3 (emphasis omitted)), State Farm also overlooks the testimony and report of Trooper Schrader.

Finally, even assuming that the Unidentified Truck did not cross into Spears' lane of travel, the Court is not persuaded that a reasonable factfinder would be unable to conclude that the Unidentified Truck acted negligently, based on the record evidence. Spears testified that just before the accident, the Unidentified Truck was accelerating past his truck (preventing Spears from moving into the left-hand lane), while "starting to drift over towards" him.[2] Ultimately, Spears claims that just prior to the point of impact with Withrow's vehicle, the Unidentified Truck was "crowding" him and was "too close" or "closer than he should have been" to Spears' lane of travel. (D.I. 52, ex. B. at 30-31, 70) State Farm has not convinced the Court that even if all of this testimony is credited by the factfinder, the Unidentified Truck's actions—coming at a time when it and Spears' truck were passing a car (Withrow's car) parked close by on the

---

[2] Spears testified that his truck was traveling at approximately 65 miles per hour at this point, (D.I. 52, ex. B at 22); if the Unidentified Truck was accelerating past Spears' truck, it presumably was exceeding that rate of speed.

11

adjacent shoulder of the roadway—could not be deemed negligent. While State Farm asserts that "[i]f the unidentified truck did not cross into Spears' lane, no breach of any duty can be shown and the prima facie case fails as a matter of law[,]" (D.I. 46 at 2), it cites no legal authority in support of this categorical proposition.[3]

State Farm's second argument is that, even assuming *arguendo* that the Unidentified Truck did breach a duty of care, the facts fail to establish that such negligent conduct by the Unidentified Truck proximately caused the accident, because Spears "testified consistently that he never left his own lane of travel, nor did he cross the white line" on the right side of the roadway. (D.I. 46 at 12; *see also* D.I. 55 at 6) Thus, in State Farm's view, it "appears that Spears himself broke any arguable proximate cause chain by never leaving his lane of travel regardless of any action by the Unidentified Truck." (D.I. 46 at 12-13) Again, however, State Farm fails to account for other contradictory testimony in the record.

For example, although Spears did testify that he did not believe that he crossed the white

---

[3] State Farm's citation to the ruling by the United States District Court for the Eastern District of Pennsylvania in *Nationwide Mut. Ins. Co. v. Cassalia*, Civ. A. No. 90-5640, 1991 WL 78192 (E.D. Pa. May 6, 1991), (D.I. 46 at 9-10; D.I. 55 at 5-6), does not compel a different conclusion. In *Nationwide*, the defendants claimed UM benefits pursuant to a policy issued by a plaintiff insurer, with respect to injuries one of the defendants sustained while he was rummaging through the trunk of his vehicle. *Id.* at *1. An unidentified car's horn had sounded, causing the defendant to startle and hit his head on the inside of his car's trunk. *Id.* The defendant had alleged no facts regarding the unidentified car, other than the fact that he heard the car's horn honk and was injured. *Id.* at *2. The *Nationwide* Court found that such facts, standing alone, could not support a finding of negligence, and that a grant of summary judgment was warranted. *Id.* State Farm concedes, as it must, that the facts in *Nationwide* are far different than those relating to the instant accident, but appears to cite the case simply for the proposition that it is *possible* for a claim of negligence to be adjudicated at the summary judgment stage. (D.I. 55 at 5) The Court does not dispute that conclusion. However, the facts in *Nationwide* are so different than those at issue here (and are more benign, if the Court, as it must, draws all inferences in favor of the non-moving party), that the case is otherwise of little analytical value.

line on the right-hand side of his lane (i.e., the line nearest to Withrow's car on the right-hand shoulder), Spears also stated that he could not see this line at the time (just as he could not see the white line to his left separating his lane from the lane in which the Unidentified Truck was traveling). (D.I. 52, ex. B at 31-32) Plaintiff's counsel then asked Spears during the deposition if any part of Spears' tractor trailer crossed the white line to his right, to which Spears responded: "No. I'm going to say *not to my knowledge*, no." (*Id.* at 32 (emphasis added)) A few moments later, Spears stated that "I don't *believe* that I went over the white line. *I can't say that absolutely* because, no, I can't see [the white line]." (*Id.* at 33 (emphasis added)) Spears testified that he was sure that he did not hit the rumble strip, and it was this fact, along with his many years of experience with truck driving, that formed his belief that his tractor trailer did not cross the white line to his right. (*Id.* at 32-33, 78) So while State Farm presents Spears' testimony as leaving no doubt that he did not cross that white line, this ignores the fact that Spears himself could not foreclose the possibility.

Moreover, Trooper Schrader's testimony was divergent on this point. Trooper Schrader testified that Spears told him that Spears' tractor trailer had veered off of the "roadway across the fog line to avoid having a collision with the other tractor trailer." (*Id.*, ex. J at 16; *see also id.* at 37-38, 40-41)[4]

Perhaps most significantly, State Farm ignores Withrow's version of events. At his deposition, Withrow testified that at the moment of impact, his car was to the right of the rumble strip, his driver's-side car door was partially open, and his hand was on the door handle (as he

---

[4] For his part, Spears remembered telling the Trooper that he "never heard the rumble strip[,]" but did not recall discussing the white line with Trooper Schrader. (*Id.*, ex. B at 78)

was in the process of closing the door). (*Id.*, ex. C at 29, 33, 46) According to Trooper Schrader, Withrow told him the same just moments after the accident. (*Id.*, ex. J at 18-19) Thus, as Defendants note, "[i]f the jury finds Plaintiff's version of the cause of the accident more likely than Defendants' version, then the jury would have to find that Plaintiff's driver's side door never crossed over into Spears' travel lane, and that Spears must have crossed into the shoulder of the road." (D.I. 52 at 6) Indeed, while Plaintiff did not take part in the briefing on this Motion, Plaintiff's Complaint charges Spears with violating Del. Code tit. 21, § 4122(1), for "[f]ail[ing] to drive his motor vehicle in a single lane[.]" (D.I. 1, ex. A at ¶ 7)[5]

In sum, the state of the record regarding this negligence issue fails to "compel only one conclusion[.]" *Faircloth*, 317 A.2d at 871. Rather, the material facts are at times conflicting,

---

[5] State Farm attempts to support its position as to the lack of evidence regarding proximate cause by citation to *Johnson v. Magee*, C.A. No. 05C-05-006 RFS, 2007 WL 4248523 (Del. Super. Ct. Nov. 30, 2007). (D.I. 46 at 11-12; D.I. 55 at 5-6) Here again, however, the Court finds that the facts of *Johnson* are so inapposite to those here, that they render the case unhelpful. In *Johnson*, the plaintiff filed a personal injury action arising out of a collision at an intersection with the defendant's vehicle. *Id.* at *1. The plaintiff alleged that an unknown bus driver's wave to the defendant was a cause of the accident, because it was distracting to the defendant. *Id.* at *3. However, the evidence of record regarding the wave consisted of the testimony of defendant, who stated that he understood this wave to communicate that the bus driver was stopping—not that the bus driver was waving the defendant through the intersection. *Id.* at *2-3. The evidence, then, was that the defendant did not rely on the wave before entering the intersection, but instead independently looked to see if the intersection was clear before proceeding forward. The Delaware Superior Court granted summary judgment for plaintiff's UM insurance carrier, finding that the undisputed facts refuted plaintiff's contention that the bus driver's wave was a proximate cause of the collision, as the defendant driver "did not rely on that wave before entering the intersection; instead, he turned to the left to look before entering the intersection." *Id.* at *3. In contrast, here Spears has consistently testified that it was the conduct of the Unidentified Truck that caused him to move in his own lane of travel, thus causing his tractor trailer to strike Withrow's car. Thus, while the undisputed evidence in *Johnson* clearly demonstrated that the bus driver's conduct did not negligently cause the accident, here it is at least possible that a jury could find that negligent conduct of the Unidentified Truck proximately caused the collision with Withrow.

14

and are not unequivocal. Accordingly, it is not appropriate for the Court to weigh such evidence at this stage, as that is the province of the jury. *See Evans*, 2001 WL 845751, at *3 (court noting that it "does not weigh evidence and does not judge credibility" in denying a summary judgment motion, where there was "a material factual dispute regarding the manner and cause of the collision" such that the factfinder could conclude that "a phantom vehicle negligently caused an emergency situation leading to the accident").[6] Here, a jury could attribute negligence for the collision to the Unidentified Truck, or it may not; either way, it is the jury's role to "resolve the conflicts in evidence." *Id.* Therefore, summary judgment is inappropriate.

## IV.  CONCLUSION

For the reasons set forth above, I recommend that State Farm's Motion for Summary Judgment be DENIED.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1) and D. Del. LR 72.1. The failure of a party to object to legal conclusions may result in the loss of the right to de novo review in the district court. *See Henderson v. Carlson*, 812 F.2d 874, 878-79 (3d Cir. 1987); *Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir.

---

[6] *Cf. Goddard v. City of Deadwood*, No. CIV. 09-5069, 2011 WL 4549171, at *5-7 (D.S.D. June 3, 2011) (denying motion for summary judgment where plaintiff made a claim against UM carrier based on driver's testimony that an unidentified car played a role in the subject accident, despite the carrier's argument that negligence could not be attributed to the unidentified car because it was traveling properly in its lane, where there remained genuine issues of material fact for a jury to consider as to whether the car was the proximate cause of the accident); *Mason v. State Farm Mut. Auto. Ins. Co.*, No. 4:09CV1822 FRB, 2010 WL 2870667, at *3, *5-7 (E.D. Mo. July 19, 2010) (denying UM carrier's motion for summary judgment, where plaintiff put forward sufficient evidence to establish genuine disputed issues of material fact regarding whether and to what extent a phantom vehicle acted in a negligent manner to cause the subject vehicle to lose control, and where the evidence included contradictory testimony as to whether the oncoming phantom vehicle was in the same lane as the subject vehicle just prior to the accident).

2006).

The parties are directed to the Court's Standing Order for Objections Filed Under Fed. R. Civ. P. 72, dated October 9, 2013, a copy of which is available on the District Court's website, located at http://www.ded.uscourts.gov.

Dated: October 15, 2013

_____
Christopher J. Burke
UNITED STATES MAGISTRATE JUDGE